**FILED**
**JULY 30, 2026**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SSHI, LLC, | ) | No. 41328-4-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | UNPUBLISHED OPINION |
| OF LABOR & INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| In re: SSHI, LLC, | ) | |
| | ) | |
| Docket No. 23 W0003 | ) | |
| Citation & Notice No. 317969114 | ) | |

COONEY, A.C.J. — The Department of Labor and Industries (Department) cited

SSHI, LLC, for a serious violation of WAC 296-155-477(1)(f)(i), requiring the

completion of a "stairway to a second or higher floor before studs are raised to support

the next higher floor." SSHI appealed to the Board of Industrial Insurance Appeals

(Board). Following a hearing, an industrial appeals judge (IAJ) issued a proposed

decision and order affirming the citation. SSHI petitioned for review, and the Board

adopted the IAJ's proposed decision and order. SSHI then appealed to the superior court, which also affirmed.

SSHI appeals to this court, arguing that a different standard for knowledge of a violative condition should apply to general contractors than that applied to subcontractors. SSHI also argues that substantial evidence does not support the Board's findings that SSHI had constructive knowledge of the violation. We disagree with SSHI's arguments and affirm.

BACKGROUND

SSHI was the general contractor for Windhaven, a large housing development project in Spokane, Washington. SSHI subcontracted the construction work for Windhaven to John 316, among others. John 316, in turn, subcontracted the framing of the homes to SVK Builders. SSHI typically had three superintendents and two assistants supervising safety and production at the Windhaven project. The superintendents and assistants each typically drove or walked by homes being constructed 10 or more times per day.

On June 8, 2022, Douglas Thoet, a Department inspector, inspected the Windhaven project. During his inspection, Mr. Thoet noticed that the second floor walls of a home were being erected with an extension ladder providing the only means of accessing the second floor. SSHI was cited for a serious violation of WAC 296-155-477(1)(f)(i) that mandates that stairs be installed to a second floor, or higher floor, before

studs are constructed to support the next floor. The violation was considered serious because a fall from the second floor of a structure could cause someone to "lose their life if they sustain an injury or a serious injury from a fall from that distance." Administrative Record (AR) at 863.

SSHI appealed the citation to the Board, arguing that "it took reasonable steps to ensure its subcontractors complied with safety rules." AR at 41. An evidentiary hearing was held before an IAJ. Numerous witnesses testified at the hearing and exhibits, including photographs of the alleged violations, were admitted.

Prior to the hearing, SSHI moved for admission of the CR 30(b)(6) deposition transcript of Terry Walley. SSHI argued Mr. Walley's deposition "provides the history and policy basis for the [Division of Occupational Safety and Health (DOSH)] Directive 27.00 which the Department expects its compliance staff to follow." AR at 212. The IAJ did not consider Mr. Walley's deposition testimony in making its decision, but DOSH Directive 27.00 was admitted. DOSH Directive 27.00 establishes guidelines for "DOSH compliance and consultation staff when assessing an upper-tier contractor's compliance with the Washington Industrial Safety and Health Act (WISHA)." AR at 1885. DOSH Directive 27.00 provides "interpretation of appropriate application of [WISHA]" to "general contractor[s]" and "upper-tier subcontractor[s]." AR at 1885.

At the hearing, Mr. Thoet testified that he inspected the Windhaven project on June 8, 2022, and noticed a person not wearing fall protection while on the second level

3

of a home being constructed. Mr. Thoet photographed the person from the street. Mr.

Thoet then took a series of photographs from a different area of the construction zone.

Mr. Thoet testified that "during a review, while the inspection was still going on," his

supervisor noticed no staircase was in place before the second floor walls of a home were

constructed. AR at 856. Mr. Thoet testified workers were "using an extension ladder to

access the second level" of the home. AR at 857. A close examination of the

photographs revealed that the "left side rail of that extension ladder" was visible "through

th[e] main entrance doorway." AR at 858. The photographs were admitted at the

hearing.

Mr. Thoet also testified that this was a "repeat" citation because SSHI had been

cited for violating WAC 296-155-477(1)(c) [1] within the last three years. AR at 867. An

exhibit was admitted showing SSHI had been cited for a violation of WAC 296-155-

477(1)(c) on August 5, 2021. Mr. Thoet determines whether a prior violation is a

"repeat" violation by looking at whether the prior violation is "similar in nature" to the

current violation. AR at 867. Specifically, Mr. Thoet testified he looks at whether "it's

within the same section for the same WAC, just different subsections." AR at 867.

Sean Potter, a superintendent for SSHI, testified that he saw that "the second floor

walls" of the home at issue were up on June 8, 2022. AR at 792. When asked whether

---

[1] "In all buildings or structures two or more stories or 24 feet or more in height or depth, you must install suitable permanent or temporary stairways."

he remembered what time employees were done installing floors in the home, Mr. Potter testified, "I don't look that close. It's just the generic idea that people are on site and getting things done." AR at 791. Mr. Potter stated he "either drove by" or "walked by" the home but he "didn't really stop and go into anything unless there was a need to, whether [he saw] big schedule complication[s] or a safety violation." AR at 791-92. Mr. Potter further testified that he was aware stairs needed to be installed before the second floor walls could be erected. However, he recognized that "it's not always obvious" if stairs have been installed, especially in certain floor plans like the one at issue. AR at 797. Mr. Potter testified, "This particular [floor] plan makes it difficult as you're driving or walking by to know if [stairs are] in or not" because the stairs are located behind the powder room. AR at 798.

Zach Cody, the area construction manager for SSHI, testified that he drove by the home at issue "maybe 10 to 12 times a day," and the superintendents collectively drove by the home "30 to 40 times throughout the day" on June 22, 2022. AR at 704. When asked if he was aware that stairs needed to be installed before the second floor walls were erected, Mr. Cody responded that he knew "that that was the case" but "that morning [the construction crew] had started the subfloor and by the end of the day they had their walls up so without actually walking into the house and checking on the stairs, we just assumed that they had thrown in the stairs as they were going." AR at 721.

Following the evidentiary hearing, the IAJ issued a "Proposed Decision and Order" affirming the citation. AR at 41-48 (some capitalization omitted). The IAJ found, "SSHI had constructive knowledge of the lack of stairs. The violation was visible from the street and in plain view. SSHI, LLC could have known about the violations through the exercise of reasonable diligence." AR at 47. Relatedly, the IAJ noted it was not persuaded by SSHI's argument that the violation was not in plain view because the "lack of a staircase was at this site visible from the street," and if "an individual was close to the powder room window or the garage entrance, he or she would notice the lack of stairs." AR at 45. The IAJ was also unpersuaded by SSHI's argument regarding the absence of supervisory personnel on the jobsite. The IAJ noted that the Board concluded in a prior appeal that "if the absence of supervisory personnel on a job site was enough to avoid the consequences of a safety violation, employers merely would begin to follow a practice of not having a supervisor or other managerial representatives present at its worksite." AR at 44-45. The IAJ also found the base penalty was $6,600 but was multiplied by two, for a total of $13,200, because SSHI "had one prior final citation for fall protection violations dated within three years of this violation." AR at 48.

SSHI petitioned for review of the IAJ's decision. The Board denied the petition and adopted the IAJ's proposed decision. SSHI appealed to the superior court, which affirmed the Board's order.

SSHI appeals.

6

ANALYSIS

STANDARD FOR PROVING KNOWLEDGE OF VIOLATIVE CONDITION

SSHI argues a different standard for proving knowledge of a violative condition should apply to general contractors than that applied to subcontractors. We disagree.

General contractors in the Evergreen State have a specific, nondelegable duty to ensure compliance with WISHA regulations. *Stute v. P.B.M.C. Inc.*, 114 Wn.2d 454, 463-64, 788 P.2d 545 (1990); RCW 49.17.060(2). As a matter of policy, per se liability is imposed on general contractors for WISHA violations because of general contractors' "per se control over the workplace." *Stute*, 114 Wn.2d at 464. A WISHA violation by a subcontractor is chargeable to both the subcontractor and the general contractor because the general contractor is "the primary employer" whose supervisory authority puts it "in the best position to ensure compliance with safety regulations." *Id.* at 463; *see also Millican v. N.A. Degerstrom, Inc.*, 177 Wn. App. 881, 893, 313 P.3d 1215 (2013).

SSHI argues that, as general contractor, it had a lower level of responsibility and less control over the day-to-day activities of employees than the subcontractor, SVK Builders. It contends the test for constructive knowledge should be different for general contractors.[2] We disagree and hold that the standard for knowledge of a violative condition is the same for general contractors as it is for subcontractors.

---

[2] As discussed below, to prove SSHI committed a serious WISHA violation, the Department had to prove the employer knew or should have known, through the exercise of reasonable diligence, of the violative condition. *Wash. Cedar & Supply Co. v. Dep't of*

SSHI argues that, as the general contractor, it "was placed in the same shoes of its subcontractor even though it did not directly control the work." Opening Br. of Appellant at 59. SSHI urges this court to look to federal cases interpreting the Occupation Safety and Health Act of 1970 (OSHA) and determine that "the duty of care for the general contractor is less than the duty of care a subcontractor owes to its own employees." Opening Br. of Appellant at 36. We decline SSHI's invitation to consider federal precedent.

Our Supreme Court has explained that a general contractor owes a "'specific duty'" to all employees on a job site to "'comply with the rules, regulations, and orders promulgated under [WISHA].'" *Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 735-36, 452 P.3d 1205 (2019) (internal quotation marks omitted) (quoting RCW 49.17.060(2)); *Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 122-23, 52 P.3d 472 (2002)). "A general contractor *always* owes this duty under WISHA—no analysis of whether the general contractor retained control is necessary." *Vargas*, 194 Wn.2d at 736. SSHI's arguments to the contrary and its request that we look to federal OSHA case law[3] and determine general contractors are subject to a lesser duty of care are unavailing. The law is well

*Lab. & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012 (2003); RCW 49.17.180(6).

[3] *Shimmick Constr. Co. v. Dep't of Lab. & Indus.*, 12 Wn. App. 2d 770, 778, 460 P.3d 192 (2020) ("In interpreting WISHA, we may look to federal decisions that interpret WISHA's federal analogue, the Occupational Safety and Health Act of 1970 (OSHA), but we will not resort to federal case law when Washington law provides controlling precedent." (footnote omitted)).

settled; general contractors have a nondelegable duty to ensure compliance with all WISHA regulations, and they have per se liability for WISHA violations.

SSHI contends the Board did not address "whether the supervision conducted by [SSHI] superintendents met its non-delegable duty as the general contractor" or "the differences between subcontractors and general contractors." Opening Br. of Appellant at 63. SSHI misunderstands the issues in this WISHA appeal. There is not a requisite number of safety inspections that would satisfy SSHI's nondelegable duty to ensure compliance with WISHA regulations. Indeed, SSHI could conduct a multitude of safety inspections per day, but the number of inspections is irrelevant if SSHI does not meet its duty to ensure compliance with safety regulations. Moreover, "the differences between subcontractors and general contractors" are immaterial to whether SSHI met its nondelegable duty. Opening Br. of Appellant at 63.

SSHI also argues that the proposed decision and order "constitutes the application of strict liability as no explanation is provided to support the conclusion that [SSHI's] safety plan failed." Opening Br. of Appellant at 57-58. This argument fails because, as the Department points out, it only needed to prove SSHI knew or should have known of the violative conditions through the exercise of reasonable diligence. *Potelco, Inc. v. Dep't of Lab. & Indus.*, 191 Wn. App. 9, 34, 361 P.3d 767 (2015).

As the general contractor, SSHI is subject to the same test for constructive knowledge as the subcontractor.

CR 30(b)(6) DEPOSITION TRANSCRIPT

SSHI claims the IAJ erred in denying its motion to admit the CR 30(b)(6) deposition transcript of Mr. Walley. We disagree with SSHI.

We review a presiding officer's evidentiary rulings for abuse of discretion. *Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 104, 187 P.3d 243 (2008).

Here, the IAJ did not consider Mr. Walley's deposition testimony that SSHI moved to admit. The IAJ did not abuse its discretion in declining to consider Mr. Walley's deposition testimony. Under ER 401, the testimony regarding the history and development of DOSH Directive 27.00 was not relevant because the directive is not a legal statement or formal regulation regarding the requirements expected of general contractors. *See In re Exxel Pacific*, No. 96 W182, 1998 WL 718040, at \*6 (Wash. Bd. Indus. Ins. Appeals July 6, 1998) ("[W]e cannot adopt [policy] as a definitive legal statement of the requirements of general contractors."); *J.E. Dunn Nw., Inc. v. Dep't of Lab. & Indus.*, 139 Wn. App. 35, 52, 156 P.3d 250 (2007) ("Policy statements are 'advisory only.'"). Indeed, why and how DOSH Directive 27.00[4] was developed has no legal relevance as it is not a regulation having any force of law.

The IAJ did not abuse its discretion in deciding not to consider Mr. Walley's CR 30(b)(6) deposition testimony.

---

[4] DOSH Directive 27.00 was admitted as exhibit 8.

KNOWLEDGE OF A VIOLATIVE CONDITION

Turning to the merits, SSHI argues it did not have actual or constructive notice of the safety violation. We disagree. Substantial evidence supports the Board's findings that SSHI had constructive knowledge of the violation which, in turn, supports its conclusion that SSHI committed a serious safety violation.

SSHI was cited for violating WAC 296-155-477(1)(f)(i), which states, "You must complete the stairway to a second or higher floor before studs are raised to support the next higher floor."

To prove SSHI committed a serious violation, the Department was required to show: (1) "the cited standard applies;" (2) the employer failed to meet the standard; (3) "employees were exposed to, or had access to, the violative condition;" (4) the employer knew or should have known, through the exercise of reasonable diligence, of the violative condition; and (5) there is a substantial probability that serious bodily injury or death could result from the violative condition. *Wash. Cedar & Supply Co. v. Dep't of Lab. & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012 (2003); RCW 49.17.180(6).

"We construe WISHA statutes and regulations liberally to achieve their purpose of providing safe working conditions for workers in Washington." *Frank Coluccio Constr. Co. v. Dep't of Lab. & Indus.*, 181 Wn. App. 25, 36, 329 P.3d 91 (2014); *see also* RCW 49.17.010. We give substantial weight to an agency's interpretation of regulations within its area of expertise. *Wash. Cedar & Supply Co., Inc. v. Dep't of Lab. & Indus.*, 137 Wn.

App. 592, 598, 154 P.3d 287 (2007). Thus, we will uphold the agency's interpretation of a regulation "if it reflects a plausible construction of the statutory language and is not contrary to the legislature's intent and purpose." *Id.*

When analyzing a WISHA appeal, we review the Board's decision based on the record before it. *Erection Co. v. Dep't of Lab. & Indus.*, 160 Wn. App. 194, 201, 248 P.3d 1085 (2011). If the Board's findings are supported by substantial evidence, they are conclusive. *Id.* at 202; RCW 49.17.150(1). "Evidence is substantial if it is enough to convince a fair-minded person of the truth of the stated premise." *Shimmick Constr. Co.*, 12 Wn. App. 2d at 778. We will not reweigh the evidence on appeal. *Potelco, Inc. v. Dep't of Lab. & Indus.*, 194 Wn. App. 428, 434, 377 P.3d 251 (2016). We construe the evidence in the light most favorable to the party that prevailed at the administrative hearing, here, the Department. *Frank Coluccio Constr. Co.*, 181 Wn. App. at 35.

The knowledge element may be proved by evidence of actual or constructive knowledge. *See* RCW 49.17.180(7). An employer has constructive knowledge of a violation if it is "readily observable or in a conspicuous location in the area of the employer's crews." *Pro-Active Home Builders, Inc. v. Dep't of Lab. & Indus.*, 7 Wn. App. 2d 10, 18, 465 P.3d 375 (2018). The Department may show constructive knowledge "through evidence that a violation was in plain view." *Potelco*, 194 Wn. App. at 439.

SSHI argues substantial evidence does not support the Board's findings that (1) "SSHI had constructive knowledge of the lack of stairs," (2) the "violation was visible from the street and in plain view," and (3) SSHI "could have known about the violations through the exercise of reasonable diligence." AR at 47. The Board's findings are supported by substantial evidence.

The photographs of the violation admitted at the hearing show that an individual was able to view that stairs were not installed from the street. Mr. Thoet testified that a close examination of the photographs revealed the presence of an extension ladder and that the ladder appeared to be the only means of accessing the second floor of the home.

Moreover, Mr. Potter testified that he saw "[t]he second floor walls were up" on the day of the violation. AR at 792. When asked if he remembered what time employees were done installing floors in the home at issue, Mr. Potter stated, "I don't look that close. It's just the generic idea that people are on site and getting things done." AR at 791. Mr. Potter further testified that he was aware that stairs needed to be installed before the second floor walls could be erected. However, Mr. Potter claimed that "[i]t's not always obvious" if stairs have been installed or not, especially in certain floor plans like this one. AR at 797. Finally, when asked if he was aware that stairs needed to be installed before second floor walls could be erected, Mr. Cody responded, "[T]hat morning they had started the subfloor and by the end of the day they had their walls up so

without actually walking into the house and checking on the stairs, we just assumed that they had thrown in the stairs as they were going." AR at 721.

Mr. Cody and Mr. Potter essentially testified that they did not look very closely to determine whether stairs had been installed prior to the construction of walls on the second floor. Further, the photographs demonstrated that the lack of stairs was readily observable from the street. Based on the evidence before it, the IAJ and the Board could find that SSHI had constructive knowledge of the violation. SSHI could have discovered the violation had it exercised reasonable diligence.

In passing, SSHI also claims that findings of fact 8 and 9 are unsupported by the evidence.[5] SSHI argues, "The Board further erred by concluding that the prior citations that occurred at other projects with different subcontractors should have put [SSHI] on notice that SVK [Builders] would not install the stairs." SSHI claims, "This was the first time that SVK [Builders] failed to put in the stairs at Windhaven, and the duration of exposure was for a very limited period of time." Opening Br. of Appellant at 64. The Board found the base penalty was $6,600 and that it should be multiplied by two because SSHI "had one prior final citation for fall protection violations dated within three years of this violation." AR at 48.

---

[5] SSHI assigned error to findings of fact 8 and 9. This is the only argument that is arguably related to those findings.

WISHA authorizes the Department to assess civil penalties when an employer repeatedly violates the WISHA. RCW 49.17.270, .180. RCW 49.17.180(1) states, "[A]ny employer who willfully or repeatedly violates . . . any safety or health standard adopted under the authority of this chapter, of any existing rule or regulation governing the conditions of employment adopted by the department . . . may be assessed a civil penalty not to exceed seventy thousand dollars for each violation." WAC 296-900-14020 states one repeat violation multiplies the base penalty by two and that "[h]istory is based on the prior three years." Moreover, WAC 296-800-099 ("Repeat violation") clarifies, "A violation is a repeat violation if the employer has been cited one or more times previously for a substantially similar hazard."

SSHI does not argue that substantial evidence does not support the Board's findings. Instead, it argues the Board should not have concluded the prior citation put SSHI on notice that SVK Builders would not install stairs in accordance with the WAC. The Board did not, however, make a finding to this effect. The Board concluded that this was a "repeat" violation based on the evidence before it. The Board's finding is supported and SSHI's argument fails.

SSHI also points to the Board's recent decision in *In re Acropolis Construction* in support of its argument that it was "not reasonable, nor required, for upper tier general contractors to constantly observe subcontractor employees." Opening Br. of Appellant at

68; *In re Acropolis Constr.*, No. 23 W1214, 2024 WL 5336676 (Wash. Bd. Indus. Ins.

Appeals Dec. 16, 2024). *Acropolis* is materially distinguishable.

In *Acropolis*, the Board vacated citations issued to Acropolis, a subcontractor,

because the safety violations occurred on a Saturday, which was not a scheduled

workday, by an employee who was suspended. 2024 WL 5336676, at *3-5. Thus, the

Board determined that Acropolis did not have knowledge of the violations because it

"had no reason to inspect the work area, to anticipate hazards" on a non-workday. *Id. *2.

Though the violations were in plain view, "employers can't be expected to exercise

reasonable diligence to make sure safety rules are being followed on non-work days." *Id.*

In stark contrast to the facts in *Acropolis*, here, the safety violation occurred on a

scheduled workday during which SSHI *was* expected to exercise reasonable diligence to

ensure compliance with all WISHA regulations. The Board's reasoning in *Acropolis* is

inapplicable to these facts.

SSHI next argues this court should not adopt the Board's statement that "if the

absence of supervisory personnel on a job site was enough to avoid the consequences of a

safety violation, employers merely would begin to follow a practice of not having a

supervisor or other managerial representatives present at its worksite." AR at 44-45.

SSHI argues that, because violations can be proved through constructive knowledge, "if

the employer had taken reasonable steps and exercised due diligence in supervising the

job such that the violations would have been discovered, the knowledge element is

established even if no supervisor was present at the time of the violation" so there is no

incentive for an employer not to supervise its employees. Opening Br. of Appellant at

62-63. Even if we disagree with the Board's statement, the context of it is important.

The challenged statement was made in the context of summarizing a prior Board decision

and was a correct summary of the Board's holding from a prior decision. *In re America

1st Roofing & Builders Inc.*, No. 16 W0351, 2018 WL 3413602, at \*2 (Wash. Bd. Indus.

Ins. Appeals April 9, 2018).[6]

Additionally, SSHI alleges the Board needed to address "whether the frequency of

safety inspections required of SVK [Construction] is the same for [SSHI]" and "how

frequently [SSHI] superintendents were required to supervise its subcontractors."

Opening Br. of Appellant at 63. As discussed above, SSHI had a nondelegable duty to

ensure compliance with all WISHA regulations. There is not a specific number of safety

checks that will satisfy this requirement. Instead, general contractors like SSHI need to

conduct as many safety checks as necessary to discover and correct safety violations

within their work sites.

---

[6] "America 1st contended that standing alone, the fact that it did not have any manager, lead worker, or supervisor at the worksite sufficed to prove that it could not have been aware of the violation. That circumstance is not determinative of whether America 1st should have had knowledge of the fall protection violation. Were it so, employers would be free to avoid the consequences of a safety violation by merely following a practice of not having a supervisor or other managerial representative present at its worksite. Employers cannot evade responsibility for a safety violation by such a tactic."

No. 41328-4-III
*SSHI v. Dep't of Lab. & Indus.*

Finally, SSHI contends the Board incorrectly concluded the violation was in plain view because the violation was not easily observable or obvious. The IAJ found SSHI's argument, that the violation was not in plain view, to be unpersuasive based on the photographic evidence and because the lack of stairs would have been obviously observable had an individual approached the "powder bathroom window or the garage entrance." AR at 45. The testimony and photographs admitted at the hearing support the Board's finding that the violation was in plain view.

Substantial evidence supports the Board's findings that SSHI had constructive knowledge of the violations.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, A.C.J.

WE CONCUR:

_____
Murphy, J.

_____
Hill, J.

18